# In the United States Court of Federal Claims

| | |
|---|---|
| DR. REBECCA GALLOGLY, | ) |
| Plaintiff, | ) |
| v. | ) |
| THE UNITED STATES OF AMERICA | ) |
| U.S. ATTORNEY'S OFFICE, WESTERN DISTRICT OF TEXAS - AUSTIN | ) |
| THE TEXAS STATE BAR | ) CASE NO: 1:20-CV-00261-MCW |
| THE DEPARTMENT OF HEALTH AND HUMAN SERVICES | ) SENIOR JUDGE M.C. WILLIAMS |
| THE U.S. DEPARTMENT OF EDUCATION'S OFFICE FOR CIVIL RIGHTS | ) |
| THE UNIVERSITY OF TEXAS SYSTEM | ) |
| THE UNIVERSITY OF TEXAS AT AUSTIN | ) |
| THE UNIVERSITY OF TEXAS POLICE DEPARTMENT, | ) |
| Defendants. | ) |

**PLAINTIFF'S RESPONSIVE PLEADING TO THE UNITED STATES'**

**MOTION TO DISMISS**

Comes now, Dr. Rebecca Gallogly, Plaintiff in the above-styled case, and respectfully submits this Responsive Pleading to the United States' Motion to Dismiss, due June 1, 2020. This pleading is timely. Gallogly takes sections of opposing counsel's motion in kind, counter-moving for the motion to be stricken. Accordingly, Gallogly shows the following:

## STATEMENT OF THE FACTS

Assistant Attorney General Joseph Hunt began by summarizing Gallogly's general case facts. Hunt is correct that Gallogly received an award, yet failed to emphasize it was a training award and thereby an educational opportunity. Hunt's characterization of Gallogly's training as incomplete is erroneous, given there is no metric for successful completion of the postdoctoral fellowship, with wildly differing training trajectories among fellows. Acts of Congress failed and fail to protect postdoctoral fellows, compared with other educational transitions, such as from secondary to post-secondary education. Contrarily, the need for protections in transitioning from doctoral to postdoctoral training, is arguably more needed. **See Attachment 1** for jurisdictional support for this suit pursuant to 28 U.S.C. § 1491 by way of Acts of Congress.

Hunt also mistakenly characterized Gallogly's move from the first lab of her postdoctoral training, as voluntary. Rather, the Sponsor, Dr. Theresa Jones, told Gallogly to leave her lab with no reason. Gallogly asked Jones if there was anything Gallogly could have done to prevent the adverse separation between them, and Jones said no. Then, Gallogly attempted to look at it in a positive light, not having any further information from Jones, hoping perhaps Gallogly was receiving training in how NIH grant funding mechanisms work. That is, Gallogly hoped she was receiving training for the rules governing how award transfer generally proceeds, presumably for when she was a professor with a lab of her own and had her own faculty funding, as well as fellows of her own, with their individual training grants. Gallogly attempted to look upon most or all of the adverse actions she experienced from defendants as training, in part to maintain faith in the process and the defendants, and to not lose her mind thinking that everybody was "out to get her". Only with the passage of time did Gallogly discover her accruing harms and loss of reputation given the series of serious and pervasive adverse actions from defendants, becoming

semi-homeless in 2016 and impoverished then and now, with limitations on her work freedoms and no future in sight for her career.

Hunt also omitted from his recanting of case sequelae, that NIH first gave Gallogly carte blanche for the remainder of her award. Then, at the precise time when Gallogly found another sponsor, and in response to her notifying NIH as much, NIH pulled her funding, with no new terms with which she must comply that departed from the carte blanche terms, and no time to come into compliance. Hence, HHS caused Gallogly's early termination both of the award and from The University, given the new sponsor she found was happy to take Gallogly on board as long as she had funding, and HHS removed the award, imposing a lose—lose situation for her.

Gallogly's related complaint in the Fifth Circuit is unsuccessful thus far because of overwhelming substantive and procedural due process violations by courts. Gallogly is still pursuing process by way of indirect appeal and / or petition for writ of certiorari.

Gallogly seeks over $100 million in damages, and much more if the only path available to her now for Research I work commensurate with her expertise, is not made available to her.

## ARGUMENT

### I.  The Court Possess Jurisdiction for Plaintiff's Claims

Hunt lists myriad authorities to oppose Gallogly's case jurisdiction in USCFC. It is beyond the scope of this pleading to address the inherent inapplicability, unconstitutionality, or poor reasoning in each citation. Fittingly, during a livestream Supreme Court hearing in the last month, when a counselperson generally raised *stare decisis* in support of his argument, Justice Kavanaugh replied that reason and common sense must also be taken into account. As such, Gallogly will draw upon sample authorities available to her through internet searches, but largely argue the overwhelming facial statutory conflict in Hunt's arguments.

Hunt states "As an initial matter, the Court does not possess jurisdiction to entertain Dr. Gallogly's numerous claims against parties other than the United States, which is the *only* proper defendant in this Court", citing 28 U.S.C. § 1491(a)(1). Nowhere in 28 U.S.C. § 1491 is the word "only" used. Furthermore and importantly, a wealth of *stare decisis* asserts pendent jurisdiction is permissible for judicial efficiency whenever claims "derive from a common nucleus of operative fact" and are such that a plaintiff "would ordinarily be expected to try them all in one judicial proceeding." *Osborn v. Bank of the United States*, 22 U.S. (9 Wheat.) 738, 822–28 (1824); *Siler v. Louisville & Nashville R.R. Co*., 213 U.S. 175 (1909); *Hurn v. Oursler*, 289 U.S. 238 (1933); *United Mine Workers v. Gibbs*, 383 U.S. 715 (1966). Additionally, the trial court should take into account "considerations of judicial economy, convenience and fairness to litigants" while preserving justice, in pursuing pendent jurisdiction. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726–27 (1966). Moreover still, a colorable constitutional claim has been held to support jurisdiction over a federal statutory claim arguably not within federal jurisdiction. *Rosado v. Wyman*, 397 U.S. 397, 400–05 (1970). In that Acts of Congress fail to expressly provide for pendent jurisdiction in USCFC pursuant to Scalia, whereas they do for federal district courts, and in the event the view is held here, Gallogly may file suit for this failure.

In addition to pendency, the court has further facial jurisdiction over all parties pursuant to 28 U.S.C. § 1491, as illustrated in **Attachment 2**. Notably, despite Hunt's verbosity about individuals, Federal officials, and private parties, none are listed as defendants. Upon further legal analysis, Gallogly may pursue actions by way of Federal Tort Claims Act (FTCA) – although presently, she plans to refashion the complaint for jurisdiction pursuant to Acts of Congress overturning the abrogation of sovereign immunity imbued with the original version of the Administrative Procedures Act by way of judicial review, and public education code.

Hunt then raises the specious straw man of lack of jurisdiction pursuant to monetary damages by way of constitutional claims. To the contrary, the Fifth Amendment begs for due process. Litigation for other amendments is subsumed under the Fifth Amendment, given litigation regarding amendments ***is due process***. Due process is about fairness generally. Although all laws are generally about fairness, The Fifth Amendment is particular about requiring proceedings therefor. Monetary damages are a major path to fair relief, and in many cases are the only path to fair relief. Gallogly mentions "due process" about 34 times in her Claims section alone, and the Fifth Amendment several other times. Therefore, Hunt's argument, with one authority and then other citations "omitted", fails. See **Attachment 3**.

Hunt goes on to cite RCFC 10(a), stating Gallogly failed to designate the United States as a party defendant in the title of the complaint. Gallogly included the United States as the first defendant party in the caption. Gallogly assumes the caption is synonymous with "title", given that the fillable *pro se* complaint form on the court's website does not provide the opportunity to change the generic "COMPLAINT" title on the form. **See Attachment 4.** Here, Gallogly avers she is not required to follow some rule not prescribed other *pro se* litigants for this case, especially when there is no other available sample complaint posted on-line for Gallogly to follow for proper formatting.

If this is not the case, and given Hunt's assertion that the United States is the only suable party in USCFC, it is odd that Hunt is so willing to face the brunt of accusations and therefore pay damages all from the United States, some of which could be shared with other parties. Gallogly was and is acting in good faith to both change postdoctoral fellow law and treatment for the better, and reduce future likelihood of bullying and harassment and career ruination of

postdocs by all parties. Whereas the initial conditions set forth by the United States clearly bear the brunt, so too must universities act in a supportive, good faith manner towards all its trainees.

Hunt cites authorities barring suit against federal officials and private parties in the court, yet again, Gallogly lists no such defendants, rendering application of said authorities irrelevant.

Hunt then states the following:

> Further, despite Dr. Gallogly's sweeping constitutional, statutory, and civil rights claims, and assertions of discrimination, degrading treatment, injuries to her reputation, loss of freedom, mental anguish, and tortious and criminal conduct, see e.g., Compl. 10-11 ¶¶ 44-52, the Court "does not have federal question jurisdiction" pursuant to 28 U.S.C. § 1331.

There is only one place wherein Gallogly lists the number 1331 in her complaint, and it is for numbering the paragraph with that number. Nowhere in her complaint or cover page does Gallogly refer to 28 U.S.C. § 1331. In her jurisdictional statement, Gallogly rather states:

> This Court has jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1491a(1) and a(2), as this lawsuit arises under the Constitution, laws, or treaties of the United States of America, and against agencies of The United States of America, involving monetary damages exceeding $10,000.00. Because agency action is involved in parts of this suit, this Court has jurisdiction over judicial review of the matters pursuant to 5 U.S.C. § 706 in its entirety.

Gallogly did initially begin her complaint formulating it for district court, not knowing about the Tucker Act as a non-lawyer, hence her inclusion of the language "laws and treaties". Wherein Gallogly now finds 28 U.S. Code § 1502 explicitly bars suit pursuant to treaties in USCFC, Gallogly has three responses. First, such barring is an unconstitutional Act of Congress by way of the Fifth Amendment for self-executing international agreements, conferring lack of judicial equivalence with federal district courts. Second, it is an unconstitutional Act of Congress to not provide statutory mechanisms for citizens' due process affordances in the realm of self-executing international agreements. Third, many of Gallogly's claims fashioned as international rights violations bring with them the concomitant assertion of a similar or synonymous constitutional claim, or have such a claim; e.g., 28 USC §509B in the realm of torture claims. Again, Gallogly

calls upon the phrase due process approximately 34 times, and the Fifth Amendment several times in the Claims section of her complaint. Section 1491 has jurisdiction over constitutional claims against the federal government. <u>The existence of even one viable claim or valid jurisdictional statute – even wherein there may be conflicts -- bars dismissal for *pro se* litigants.</u>

Hunt then goes on to cite another unpublished authority showing the court lacks jurisdiction to pursue 42 U.S.C. § 1983 claims. Hunt's claim is summarily invalid Given that the nation's laws are *de facto* state law by way of subsumption, are designed to effect state law, and USCFC possesses concurrent jurisdiction with federal district courts. Otherwise, it raises a jurisdictional conflict for Gallogly's claim against The United States in the realm of constitutional rights for an amount exceeding $10,000.00. <u>Nevertheless, the constitutional claims stand in their own right, pursuant to Section 1941, and at least some if not all claims can reside on it alone, without Section 1983.</u> Whereas Hunt asserts civil rights claims are jurisdictional under federal district courts, the weight of Gallogly's claims reside with Fifth Amendment violations, and will further reside with Acts of Congress. Moreover, USCFC is permitted jurisdiction for public education civil rights suits pursuant to 42 U.S. Code § 2000c–8. **See Attachment 5.**

Hunt characterizes Gallogly's claims as tortious. Gallogly refrains from characterizing any of her claims as tortious. However, 28 U.S.C. § 1491 does not bar tortious action. **See Attachment 2, ¶ 2**. The common law definition of tort is any harm or injury. Harm or injury is a necessarily and fundamental basis for any civil action. Therefore, by Hunt's logice it would be necessary to bar all suits in the court. Contract suits are not non-tortious, they are simply a special type of tort. Hunt goes on to cite the Federal Tort Claims Act (FTCA), which grants jurisdiction exclusively to district courts. Yet, Hunt fails to mention the jurisdictional scope of the act: namely, that FTCA is particular to cases in which Federal employees are sued, subpoenaed, or charged **in their individual capacities**. No individuals are listed as defendants in this suit. All actions by

federal employees called into question in this suit are litigable by way of APA. Gallogly is raising these claims against government agencies themselves, given their pervasive bad actions performed by multiple employees, including those who wrote poor code of federal regulations and who, at the time of Gallogly's maltreatment may or may not have worked for the agency or agencies, or even been alive -- and not against each individual employee that participated in injury in aggregate, which would be overly burdensome and judicially inefficient.

Gallogly is seeking civil remedy for losses resulting from criminal acts, not to press criminal charges for the criminal acts themselves.

Hunt then pivots yet again to bar any litigant from virtually any relief whatsoever in USCFC. Specifically, having stated monetary damages are not jurisdictional there, he then states declaratory and injunctive relief are also outside USCFC jurisdiction. It appears Hunt believes the only type of legal relief available via USCFC is of a restitutive nature, a type of relief Gallogly certainly seeks. However, Gallogly requires other types of relief to make her whole, which she currently believes are unavailable through restitution alone.

Furthermore, 5 U.S.C. §§ 702 states:

> A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party.

Therefore, relief other than -- and in addition to -- monetary damages is a jurisdictional requirement for APA, and is not restricted to restitution. Clearly here, some type of remedy is additionally necessary to cure the agency ill that brought monetary damages in the first place. Any other interpretation would confer inequivalence of due process between FTCA and APA in federal district courts, and constitutional provisions and APA in USCFC. Importantly, neither

does 5 U.S.C. §§ 702 bar monetary relief by way of other legal mechanisms (constitutional law), statutes (Section 1491), and defendants in the suit.

Similar to Hunt's *Anderson* citation, Gallogly cannot find his *Bigelow v. United States*, No. 16-1662C, 2018 WL 739812, at *3 (Fed. Cl. 2018) citation, calling into question both its veracity and contents and therefore its applicability and reasonableness, if it exists.

Hunt then goes on to argue that Gallogly's claims based on APA have no jurisdiction in USCFC, citing some authorities. The only statutes he cites are APA Chapter 5, including 5 U.S.C. § 703, which unequivocally brings jurisdiction under USCFC, being both a court of competent jurisdiction and one in which claims against the United States may be brought:

> The form of proceeding for judicial review <u>is the special statutory review proceeding relevant to the subject matter in a court specified by statute</u> or, in the absence or inadequacy thereof, <u>any applicable form of legal action</u>, <u>including actions for declaratory judgments</u> or writs of prohibitory or mandatory injunction or habeas corpus, <u>in a court of competent jurisdiction</u>. If no special statutory review proceeding is applicable, <u>the action for judicial review may be brought against the United States, the agency by its official title</u>, or the appropriate officer. <u>Except to the extent that prior, adequate, and exclusive opportunity for judicial review is provided by law, agency action is subject to judicial review in civil or criminal proceedings for judicial enforcement.</u>

Gallogly knows of no statute barring jurisdiction for APA review in USCFC, and Hunt cites none. The specified statute is Section 1491, for claims exceeding $10,000.00 in pursuit of relief for widespread, pervasive agency failings in concert constitutional claims involving due process violations by The University of Texas , with which the United States possesses an express contractual relationship.

Gallogly avers that, without articulation for why, Hunt's claims about Gallogly's tolling arguments not establishing timeliness, are resoundingly baseless. Furthermore, many claims are within the statute of limitations, and thus jurisdictional establishment should not involve matters of timeliness at this time. Hunt's reference to NIH action only cites one instance by one official,

9

wherein there was an ongoing, pervasive failure of a hot-potatoing nature by multiple HHS officials over time, with ongoing, agency-wide fraudulent concealment occurring. As for Hunt's claims of fraudulent concealment being specific to contract, the issue is neither here nor there, given that an express or implied contract of some sort is necessary for misrepresentation to occur in the first place.

Hunt's argument that Gallogly's disability claims do not permit tolling is likewise vacuous, insulting, and without merit, absent articulation.

About Gallogly "admitting" she was editing her complaint in August 2018, a thorough litigator would see Gallogly also filed a Petition for Writ of Mandamus to the Federal Circuit because a USCFC staff attorney Beardsley violated court procedure when Beardsley failed to file the electronic version of Gallogly's complaint Beardsley received in good order. At the time, Gallogly's AGI was $3,000.00 and had been for multiple years prior, thereby preventing Gallogly from filing suit in the paper form prescribed by the rules, an action which is not barred by RCFC, yet which Beardsley barred in practice nevertheless. Therefore, Gallogly avers the initial date of submittal for this complaint, particularly given that it was not changed since the first filing attempt, is March 2019.

## II.  The Complaint States Valid Claims Against The United States

That opposing counsel states in his motion that USCFC is not the venue for APA review, yet then argues that The University of Texas is not an agency of the United States, which is therefore support for lack of jurisdiction in his assertion, insinuating there would be jurisdiction if The University of Texas was an agency of the United States, shows the level of inconsistency imbued in Hunt's motion – perhaps arguably as a function of the burdensome complication and at times contradictory nature of statute. Hunt's claim that Gallogly failed to establish any claim against

the United States upon which Gallogly can be granted relief is baseless, given its lack of articulation, and Gallogly's myriad constitutional claims.

In sum, opposing counsel's arguments for dismissal on grounds of lacking jurisdiction are largely baseless. Complaint dismissal at this stage would be unconstitutional. Gallogly opposes Hunt's movements and further seeks a 120-day extension to amend her complaint to include, among other things, Acts of Congress claims pursuant to 28 U.S.C. § 1653: "Defective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts." Gallogly seeks 120 days for her amendments because she is currently facing two deadlines for her Fifth Circuit Section 1983 case, and learned on May 22, 2020 she may be required to move on or around August 1, 2020.

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully seeks the aforementioned relief and for any further relief in connection therewith that is reasonable and proper.

SIGNED May 24, 2020

_____
**Signature of Plaintiff**
Dr. Rebecca H. Gallogly
2301 Durwood Street, Suite 3408
b3ccahunt@gmail.com
Austin, TX 78704
512-663-4396

CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on this 24th day of May, 2020, I caused to be served by electronic mail, a copy of the accompanying PLAINTIFF'S RESPONSIVE PLEADING TO THE UNITED STATES' MOTION TO DISMISS, addressed as follows:

Richard Schroeder
Trial Attorney
Commercial Litigation Branch
Civil Division
United States Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, DC
Richard.Schroeder@usdoj.gov

_____